1  ARI HOLTZBLATT (SBN 354361)
    Ari.Holtzblatt@wilmerhale.com
2  WILMER CUTLER PICKERING
    HALE AND DORR LLP
3  2100 Pennsylvania Ave., NW
   Washington, DC 20037
4  Telephone: (202) 663-6000
   Facsimile: (202) 663-6363
5
6  KYLE T. EDWARDS (SBN 323952)
    Kyle.Edwards@wilmerhale.com
7  WILMER CUTLER PICKERING
    HALE AND DORR LLP
8  50 California Street, Suite 3600
   San Francisco, CA 94111
9  Telephone: (628) 235-1061
   Facsimile: (202) 235-1001
10
11 *Attorneys for Defendant*
   X CORP.
12

EMILY BARNET (*pro hac vice*)
 Emily.Barnet@wilmerhale.com
WILMER CUTLER PICKERING
 HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8868
Facsimile: (212) 230-8888

13            **UNITED STATES DISTRICT COURT**
14          **NORTHERN DISTRICT OF CALIFORNIA**
15                  **OAKLAND DIVISION**

16 CARA CASTRONUOVA,                        Case No. 4:24-cv-2523-YGR

17              Plaintiff,

18       v.                                 **DEFENDANT X CORP.'S**
                                            **MOTION TO DISMISS TO DISMISS**
19 META PLATFORMS, INC.; X CORP;           **AMENDED COMPLAINT WITH**
   VIVEK MURTHY; JOSEPH R. BIDEN, JR.;     **PREJUDICE**
20 UNITED STATES DEPARTMENT OF
   HEALTH AND HUMAN SERVICES;
21 UNITED STATES OFFICE OF                  **Hearing:**
   MANAGEMENT AND BUDGET,                   Date:   March 25, 2025
22                                          Time:   2:00 PM
                                            Place:  Courtroom 1
23              Defendants.                 Judge:  Hon. Yvonne Gonzalez Rogers

24

25

26

27

28

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION TO DISMISS ........................................................1

STATEMENT OF RELIEF SOUGHT ...............................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................1

STATEMENT OF FACTS .................................................................................................3

    A.    Twitter's Platform And Terms Of Service.................................................. 3

    B.    Castronuova's Twitter Account ................................................................. 3

    C.    Castronuova's Allegations About Government Officials ........................... 5

    D.    Procedural Background................................................................................ 5

STANDARD OF REVIEW ................................................................................................6

ARGUMENT ....................................................................................................................6

I.    Castronuova's "Free Speech" Claims (Counts I-II) Fail As A Matter of Law ......................6

    A.    The "Free Speech" Claims Fail Because Castronuova Has Not Alleged State Action.................................................................................................................. 7

        1.    Castronuova cannot satisfy *Lugar* prong one ....................................7

        2.    Castronuova fails to allege Twitter is a state actor .............................9

    B.    Castronuova's Section 1985 Claim (Count II) Independently Fails .......................... 12

    C.    Even if Castronuova Could Allege A Constitutional Claim (Counts I-II), She Cannot Recover Any Remedy From Twitter ...................................................... 13

II.    Castronuova Does Not Plausibly Allege State-Law Tort Claims (Counts III, V-VII) .........15

    A.    Castronuova Has No Claim Under The UCL (Count III)........................................... 15

    B.    Castronuova's Implied Covenant Claim (Count V) Also Fails ................................. 17

    C.    Castronuova Cannot Allege Intentional Interference With Contractual Relations Or Prospective Economic Relations (Count VI-VII)................................. 18

III.    The Limitation Of Liability And Waiver Of Liability Clauses In The Terms Bar All Of Castronuova's Claims.................................................................................................21

IV.    Castronuova's Claims Are Independently Barred By The First Amendment And Section 230..................................................................................................................22

    A.    Twitter's Own First Amendment Rights Independently Foreclose All Of Castronuova's Claims ............................................................................................ 22

    B.    Section 230 Bars Castronuova's State Law Tort Claims (Counts III, V-VII) ........... 23

V.    Dismissal With Prejudice Is Warranted ........................................................................25

CONCLUSION ................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Al-Ahmed v. Twitter, Inc.*,
603 F. Supp. 3d 857 (N.D. Cal. 2022) ....................................................................................24

*AliveCor, Inc. v. Apple Inc.*,
592 F. Supp. 3d 904 (N.D. Cal. 2022) ......................................................................................4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................................6, 10

*Assocs. & Aldrich Co. v. Times Mirror Co.*,
440 F.2d 133 (9th Cir. 1971) .................................................................................................15

*Automated Pet Care Prods., LLC v. PurLife Brands, Inc.*,
703 F. Supp. 3d 1022 (N.D. Cal. 2023) .................................................................................20

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir. 2009), *as amended* (Sept. 28, 2009)...........................................23, 24

*Belgau v. Inslee*,
975 F.3d 940 (9th Cir. 2020) ..................................................................................................8

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,
403 U.S. 388 (1971)...............................................................................................................13

*Bray v. Alexandria Women's Health Clinic*,
506 U.S. 263 (1993)...............................................................................................................12

*Carlin Comm'ns, Inc. v. Mountain States Tel. & Tel. Co.*,
827 F.2d 1291 (9th Cir. 1987) ...............................................................................................15

*Carma Devs., Inc. v. Marathon Dev. Cal., Inc.*,
2 Cal. 4th 342 (1992)..............................................................................................................17

*Castronuova v. Meta Platforms, Inc.*,
2024 WL 1623274 (E.D.N.Y. Apr. 15, 2024) ..........................................................................6

*Children's Health Def. v. Meta Platforms, Inc.*,
112 F.4th 742 (9th Cir. 2024) ....................................................................................... *passim*

*Codexis, Inc. v. Enzymeworks, Inc.*,
2016 WL 4241909 (N.D. Cal. Aug. 11, 2016) .......................................................................19

*Corr. Servs. Corp. v. Malesko*,
534 U.S. 61 (2001).................................................................................................................13

*Daniels v. Alphabet Inc.*,
  2021 WL 1222166 (N.D. Cal. Mar. 31, 2021) ............................................................................11

*Darnaa, LLC v. Google Inc.*,
  236 F. Supp. 3d 1116 (N.D. Cal. 2017) ...................................................................................22

*Doe v. Epic Games, Inc.*,
  435 F. Supp. 3d 1024 (N.D. Cal. 2020) ...................................................................................17

*Doe v. Google LLC*,
  2021 WL 4864418 (N.D. Cal. Oct. 19, 2021) ........................................................................9, 11

*Dyroff v. Ultimate Software Grp., Inc.*,
  934 F.3d 1093 (9th Cir. 2019) .................................................................................................23

*Fed. Agency of News LLC v. Facebook, Inc.*,
  395 F. Supp. 3d 1295 (N.D. Cal. 2019) ...................................................................................11

*Fields v. Twitter, Inc.*,
  217 F. Supp. 3d 1116 (N.D. Cal. 2016) ...................................................................................24

*Gazaway v. Nelson*,
  2024 WL 3381036 (N.D. Cal. July 10, 2024)............................................................................18

*Glair v. Nat'l Evaluation Servs.*,
  2009 WL 10672610 (C.D. Cal. Apr. 27, 2009) .........................................................................22

*Godecke v. Kinetic Concepts, Inc.*,
  937 F.3d 1201 (9th Cir. 2019) ...................................................................................................6

*Great Am. Fed. Sav. & Loan Ass'n v. Novotny*,
  442 U.S. 366 (1979).................................................................................................................12

*Guz v. Bechtel Nat'l Inc.*,
  24 Cal. 4th 317 (2000) .............................................................................................................17

*Havensight Cap. LLC v. Nike, Inc.*,
  2014 U.S. Dist. LEXIS 196123 (C.D. Cal. Nov. 19, 2014)...............................................19, 20

*Hinojos v. Kohl's Corp.*,
  718 F.3d 1098 (9th Cir. 2013) ..................................................................................................16

*Holgate v. Baldwin*,
  425 F.3d 671 (9th Cir. 2005) ....................................................................................................12

*Kennedy v. Meta Platforms, Inc.*,
  2024 WL 4031486 (N.D. Cal. Sept. 3, 2024) ........................................................................8, 12

*Kwikset Corp. v. Super. Ct.*,
  51 Cal. 4th 310 (2011) .............................................................................................................15

*Lewis v. YouTube, LLC*,
   244 Cal. App. 4th 118 (2015) ................................................................................................22

*Lloyd v. Facebook, Inc.*,
   2022 WL 4913347 (N.D. Cal. Oct. 3, 2022) ..........................................................................3

*Lugar v. Edmonson Oil Co.*,
   457 U.S. 922 (1982)..................................................................................................7, 8, 9

*Madsen v. Women's Health Ctr., Inc.*,
   512 U.S. 753 (1994)...........................................................................................................14

*Mercola.com, LLC v. Google LLC*,
   2023 WL 5680112 (N.D. Cal. Sept. 4, 2023) ......................................................................18

*Moates v. Facebook Inc.*,
   2024 WL 2853976 (N.D. Cal. Apr. 3, 2024) .......................................................................16

*Moody v. NetChoice, LLC*,
   603 U.S. 707 (2024).............................................................................................2, 14, 23

*Murphy v. Twitter, Inc.*,
   60 Cal. App. 5th 12 (2021) ................................................................................................22

*Murthy v. Missouri*,
   603 U.S. 43 (2024)...................................................................................................7, 13, 14

*Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*,
   795 F.3d 1124 (9th Cir. 2015) ...........................................................................................21

*Nat'l Rifle Ass'n of Am. v. Vullo*,
   602 U.S. 175 (2024)..............................................................................................................7

*NetChoice, LLC v. Att'y Gen.*,
   34 F.4th 1196 (11th Cir. 2022) .........................................................................................23

*O'Handley v. Weber*,
   62 F.4th 1145 (9th Cir. 2023) ...................................................................................... *passim*

*Riggs v. MySpace, Inc.*,
   444 F. App'x 986 (9th Cir. 2011) .....................................................................................24

*Sikhs for Just. "SFJ", Inc. v. Facebook, Inc.*,
   144 F. Supp. 3d 1088 (N.D. Cal. 2015) ............................................................................23

*Snyder v. Phelps*,
   562 U.S. 443 (2011).............................................................................................................23

*Swipe & Bite, Inc. v. Chow*,
   147 F. Supp. 3d 924 (N.D. Cal. 2015) ..............................................................................20

*Sybersound Records, Inc. v. UAV Corp.*,
   517 F.3d 1137 (9th Cir. 2008) ................................................................................21

*Taiming Zhang v. Twitter Inc.*,
   2023 WL 5493823 (N.D. Cal. Aug. 23, 2023) ........................................15, 16, 24

*Trump v. Twitter Inc.*,
   2023 WL 1997921 (N.D. Cal. Feb. 14, 2023) ........................................................13

*Trump v. Twitter Inc.*,
   602 F. Supp. 3d 1213 (N.D. Cal. 2022) ................................................................16

*United Bhd. of Carpenters & Joiners of Am. v. Scott*,
   463 U.S. 825 (1983)................................................................................................12

*Unsworth v. Musk*,
   2019 WL 5550060 (N.D. Cal. Oct. 28, 2019)..........................................................4

*Zilberstein v. Petersen*,
   2023 Cal. Super. LEXIS 24920 (Apr. 27, 2023) ..................................................17

## STATUES AND RULES

42 U.S.C. § 1985 ............................................................... 2, 6, 7, 12, 13, 15, 16

47 U.S.C. § 230 ................................................................................3, 23, 24

Cal. Bus. & Prof. Code § 17200 ..................................................................2, 15

Cal. Bus. & Prof. Code § 17204 ......................................................................15

Fed. R. Civ. P. 8 ...........................................................................................18

Fed. R. Civ. P. 12 .....................................................................................1, 6

## NOTICE OF MOTION AND MOTION TO DISMISS

**PLEASE TAKE NOTICE** that on March 25, 2025, at 2:00 p.m. before the Honorable Yvonne Gonzalez Rogers, in Courtroom 1 of the United States District Court, Northern District of California, this Motion to Dismiss filed by Defendant X Corp. will be heard.  Pursuant to Federal Rule of Civil Procedure 12(b)(6), X Corp. hereby moves to dismiss all claims in the Amended Complaint ("AC") with prejudice for failure to state a claim.  This Motion is based on this Notice of Motion and Motion to Dismiss, the Memorandum of Points and Authorities, the Declaration of Emily Barnet, the papers on file, and the argument received by the Court.

## STATEMENT OF RELIEF SOUGHT

X Corp. respectfully seeks an order dismissing the Amended Complaint in its entirety with prejudice for failure to state a claim upon which relief can be granted.

## MEMORANDUM OF POINTS AND AUTHORITIES

The Amended Complaint cures none of the deficiencies in the original Complaint that Twitter identified in its motion to dismiss.  *See* Dkt. No. 67.[1]  Plaintiff Cara Castronuova has sued Twitter for its alleged moderation of her content on its private platform, but the Twitter Terms of Service to which Castronuova agreed, as well as the First Amendment and Section 230, protect Twitter's right to decide what third-party speech to publish. While Castronuova alleges that Twitter "shadow banned" her account as part of a wide-ranging conspiracy with Defendants Meta Platforms, Inc. ("Meta"), the U.S. Surgeon General, President Biden, the Department of Health and Human Services ("HHS"), and the Office of Management and Budget ("OMB"), "to remove from the internet social media posts by [her] because they disagreed with her viewpoints" (AC ¶ 3), the Amended Complaint—like the original complaint—fails to identify *any* specific content that Castronuova posted on Twitter, let alone plausibly allege that Twitter's removal of any such content was due to government conduct rather than Twitter's exercise of its independent judgment. Each of her claims fails for multiple reasons.

***First***, Castronuova cannot allege any "Free Speech" claims under the First Amendment or

---

[1] Twitter, Inc. has been merged into X Corp. and no longer exists, and the Twitter platform has been rebranded as "X."  But for consistency with the AC, this motion refers to X as "Twitter."

42 U.S.C. § 1985 (Counts I-II) because Twitter is a private actor.  The Ninth Circuit has held repeatedly that only in exceptional cases can private actors be subject to constitutional constraints and has rejected constitutional claims brought against social media platforms for their exercise of editorial judgment.  *See Children's Health Def. v. Meta Platforms, Inc.*, 112 F.4th 742 (9th Cir. 2024); *O'Handley v. Weber*, 62 F.4th 1145, 1155 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 2715 (2024).  Castronuova's allegations of state action are significantly weaker than the allegations in those other cases and dismissal is likewise warranted.  Castronuova also fails to allege elements of her Sections 1985 claim. And each of these claims independently fails because Castronuova cannot recover from Twitter for alleged violation of her free speech rights.

*Second*, Castronuova fails to allege multiple elements of her state-law claims.  Her California Unfair Competition Law ("UCL") claim under § 17200 (Count III) fails because she has not alleged any unlawful, deceptive, or unfair conduct by Twitter or an injury sufficient to establish statutory standing.  Her claim for breach of the implied covenant of good faith and fair dealing (Count V) fails because the conduct she challenges is expressly permitted under Twitter's Terms of Service.  Her claims for intentional interference with contract and with prospective economic relations (Counts VI-VII) both fail because she does not and cannot allege that Twitter knew of, or actually interfered with, any contract or business relationship.[2]

*Third*, all of Castronova's claims are barred by the Twitter Terms to which she agreed when she signed up for and continued to use Twitter.  Those Terms include limitation and waiver of liability clauses that cover Castronuova's claims and warrant dismissal on a motion to dismiss.

*Fourth*, the First Amendment and Section 230 bar Castronuova's claims.  As the Supreme Court recently reaffirmed, Twitter's editorial decisions about what content should appear on its private platform are protected by the First Amendment.  *See Moody v. NetChoice, LLC*, 603 U.S. 707, 737-738 (2024).  Because each one of Castronuova's claims challenge those decisions, they are barred by the First Amendment.  Section 230 of the Communications Decency Act ("Section 230") independently bars Castronuova's tort claims (Counts III-VII) because that statute

---

[2] The Amended Complaint moves directly from "Count III" to "Count V" and does not include a "Count IV."

immunizes Twitter from liability for publishing decisions that include suspending or limiting users' accounts, as Twitter is alleged to have done here.

Accordingly, this Court should dismiss the Amended Complaint with prejudice.

## STATEMENT OF FACTS

### A.    Twitter's Platform And Terms Of Service

Twitter operates the Twitter platform, an online communications platform that allows users to share views "on topics as diverse as human thought." AC ¶ 1. Twitter conditions the use of its platform on users' agreement to a set of binding Terms of Service (the "Terms"), which are at all times publicly available on the Twitter website and application. *See* Barnet Decl., Ex. A (Twitter's current Terms of Service). In its Terms, Twitter reserves the right to remove content that violates its Rules and Policies governing platform use. *Id.* at 3. Twitter also reserves the right to "stop (permanently or temporarily) providing the Services or any features within the Services to you or to users generally." *Id.* at 5. Twitter likewise "retain[s] the right to create limits on use ... at our sole discretion at any time." *Id.* at 5.[3]

Twitter's Terms include provisions governing disputes between it and its users. One such provision is a disclaimer of responsibility and liability, which provides:

> You understand and agree that the Services are provided to you on an 'AS IS' ... basis. ... [Twitter] make[s] no warranty or representation and *disclaim[s] all responsibility and liability for ... the deletion of ... any Content and other communications ...* .

Barnet Decl., Ex. A at 8 (emphasis added). The Terms also include a limitation of liability that states, in relevant part:

> [Twitter] SHALL NOT BE LIABLE FOR ANY INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL OR PUNITIVE DAMAGES ... , RESULTING FROM ... YOUR ACCESS TO OR USE OF OR INABILITY TO ACCESS OR USE THE SERVICES ... .

*Id.* at 8.

### B.    Castronuova's Twitter Account

The Amended Complaint alleges that Castronuova has a Twitter account, which she used

---

[3] This Court can take judicial notice of X's publicly available Terms because they are available on Twitter's website and their validity and authenticity cannot reasonably be in dispute. *See Lloyd v. Facebook, Inc.*, 2022 WL 4913347, at *4 (N.D. Cal. Oct. 3, 2022).

1   in 2020 to "oppose[] lockdowns and vaccine mandates" and the "effects of federal and state

2   governments' policies on personal freedoms and economic livelihoods." AC ¶¶ 25, 37.

3        The Amended Complaint alleges that Castronuova's "Twitter account was shadow banned

4   around November 2020" such that "her posts became invisible to all but those who were already

5   following her." AC ¶ 36.[4] Castronuova claims that this so-called "shadow banning occurred

6   concurrently with her increased criticism of the government's COVID-19 response and her

7   involvement in organizing protests." *Id.* Castronuova implies that this alleged shadow banning is

8   in effect today, claiming she "will *continue to suffer* ongoing harm" unless Twitter is "enjoined

9   from engaging in these unlawful business practices." *Id.* ¶ 97 (emphasis added). But contrary to

10  her claim that her Twitter posts are "invisible to all but those who were already following her,"

11  even a cursory review of those public posts—which are incorporated by reference into the

12  Amended Complaint and can be judicially noticed by this Court[5]—confirms that such posts are,

13  and have been, visible to more than the approximately 34,100 users who follow her because the

14  view counts far exceed her number of followers. *See, e.g.*, Barnet Decl., Ex. B (November 20,

15  2024 post with 320,100 views); Ex. C (September 10, 2024 post with 251,900 views); Ex. D (April

16  29, 2023 post with 248,500 views); Ex. E (May 24, 2024 post with 122,100 views).

17

18

19

20

---

21  [4] The Amended Complaint confusingly alleges both that Castronuova's Twitter account was

22  "shadow banned" around November 2020 and that her account was "shadow banned" around
    October 7, 2021. *Compare* AC ¶ 36 *with* AC ¶ 73. Castronuova's claims fail regardless of when

23  exactly she was allegedly shadow banned.

24  [5] This Court may take judicial notice of Castronuova's publicly-available posts and associated
    view counts because such posts are not subject to reasonable dispute, and their authenticity is not

25  questioned. *See, e.g.*, *Unsworth v. Musk*, 2019 WL 5550060, at *4 (N.D. Cal. Oct. 28, 2019)
    (taking judicial notice of publicly available Twitter posts). The Court alternatively may consider

26  the posts and associated view counts under the incorporation-by-reference doctrine, which "treats
    certain documents as though they are part of the complaint." *AliveCor, Inc. v. Apple Inc.*, 592 F.

27  Supp. 3d 904, 912 (N.D. Cal. 2022). "A court may incorporate a document by reference if the
    complaint refers extensively to the document or the document forms the basis for the plaintiff's

28  claim." *Id.* Here, the Amended Complaint refers extensively to Castronuova's Twitter account,
    which is the basis for her claim. *See, e.g.*, AC ¶¶ 22, 36, 73-74.

The Amended Complaint does not point to a single public post that was either "banned" or rendered "invisible" by Twitter.  Instead, Castronuova repeats the conclusory allegation that her "account was shadow banned, severely limiting the visibility of her posts critical of these [COVID-19] policies."  AC ¶ 73; *see also id.* ¶ 56 (concluding that Twitter engaged in "shadow banning accounts, and limiting the visibility of [COVID-19] content").

### C.    Castronuova's Allegations About Government Officials

Despite her allegation that Twitter shadow banned her account months before President Biden took office—"around November 2020" (AC ¶ 36)—Castronuova claims this alleged action "was influenced by government directives from the Government Defendants," including President Biden.  *Id.* ¶¶ 51, 14-18 (defining "Government Defendants" to include Defendants President Biden, Surgeon General Murthy, HHS, and OMB).  However, the Amended Complaint nowhere alleges *any* specific communications between the Government Defendants and Twitter, much less any direction from the government regarding Castronuova, her Twitter account, or particular posts by that account.

Instead, the Amended Complaint makes a number of conclusory and collective allegations that "Facebook and Twitter operated as proxies for the Government Defendants … effectively turn[ing] these platforms into agents of the state."  AC ¶¶ 53, 50-52.  It cites generalized statements from July 2021 from Surgeon General Murthy and then-White House Press Secretary Jen Psaki about being "in 'regular touch' with these social media platforms."  *Id.* ¶ 42.  The Amended Complaint also references unquoted statements to Congress by Twitter's former Chief Legal Officer and head of Trust and Safety, respectively, that Twitter "received and complied with numerous requests from the federal government to censor posts related to COVID-19" and engaged in "regular communication with federal agencies, including the FBI and the White House."  *Id.* ¶¶ 48-49.  Castronuova alleges that the shadow banning of her account "severely limit[ed] the visibility of her posts critical of [government COVID-19] policies," *id.* ¶ 73, without identifying any such posts or government communications with Twitter about them.

### D.    Procedural Background

On October 7, 2023, Castronuova filed this action in the Eastern District of New York

against X Corp., Meta, the Surgeon General, and President Biden.  On April 15, 2024, Judge Matsumoto granted X Corp. and Meta's motions to transfer venue, holding that Castronuova agreed to and is bound by forum-selection clauses in those defendants' terms.  *See Castronuova v. Meta Platforms, Inc.*, 2024 WL 1623274 (E.D.N.Y. Apr. 15, 2024).  Judge Matsumoto dismissed defendants the Surgeon General and President Biden because of Castronuova's "failure to serve either defendant."  *Id.* at *9.

Upon transfer to this Court, Defendants Meta and X Corp. filed their respective motions to dismiss the Complaint, which were fully submitted on November 15, 2024.  *See* Dkt. Nos. 64, 77 (Meta's Motion and Reply), 67, 76 (Twitter's Motion and Reply).  On November 20, 2024, Plaintiff filed a motion for leave to amend the Complaint.  Dkt. No. 78.  On November 25, 2024, the parties stipulated to Castronuova's filing of the Amended Complaint, which Castronuova filed on December 9, 2024.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim for which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  Rule 12(b)(6) applies when a complaint lacks either a "cognizable legal theory" or "sufficient facts alleged" under such a theory.  *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019).  Whether a complaint contains sufficient factual allegations depends on whether it pleads enough facts to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## ARGUMENT

## I.    Castronuova's "Free Speech" Claims (Counts I-II) Fail As A Matter of Law

Castronuova's "Free Speech" claims under the First Amendment (Counts I) and 42 U.S.C. § 1985 (Count II) all suffer from a fatal and insurmountable legal defect: Castronuova fails to allege state action to support her First Amendment claims against Twitter, which is a private company that has its own First Amendment rights to decide what third-party content to host on its private platform.  Castronuova also fails to establish other elements of her Section 1985 claim. She could not, in any event, recover any relief from Twitter on either claim.

A.      **The "Free Speech" Claims Fail Because Castronuova Has Not Alleged State Action**

"As a private company, Twitter is not ordinarily subject to the Constitution's constraints." *O'Handley v. Weber*, 62 F.4th 1145, 1155 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 2715 (2024). Under the state-action doctrine, only in "exceptional cases" will a private company like Twitter be treated as a "state actor." *Id.*; *see also Children's Health Def. v. Meta Platforms, Inc.*, 112 F.4th 742, 754 (9th Cir. 2024) ("*CHD*"). "That limitation is … an important protection for liberty": "'By enforcing [the] constitutional boundary between the governmental and the private, the state-action doctrine' … 'protects a robust sphere of individual liberty.'" *CHD*, 112 F.4th at 753 (quotation omitted). And the Supreme Court has recently underscored that "voluntary" decisions taken based on a private platform's "independent incentives to moderate content" do not constitute state action. *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 189 (2024); *Murthy v. Missouri*, 603 U.S. 43, 59-61 (2024).

Courts analyze the state action doctrine under a demanding two-step framework from *Lugar v. Edmonson Oil Co.*, 457 U.S. 922 (1982). This doctrine includes two requirements: "(1) the 'state policy' requirement and (2) the 'state actor' requirement.'" *CHD*, 112 F.4th at 754. Castronuova has not satisfied either requirement and therefore each one of her free speech claims fails. *See O'Handley*, 62 F.4th at 1156 (dismissing First Amendment claim for failure to allege state action); *id.* at 1161 (dismissing § 1985(3) claim because plaintiff failed to satisfy the conspiracy formulation of the joint action test for state action).

1.      **Castronuova cannot satisfy *Lugar* prong one.**

Castronuova's free speech claims fail at the threshold step. *Lugar* prong one requires that "the alleged constitutional deprivation … result from 'the exercise of some right or privilege created by the State' or 'a rule of conduct imposed by the State or by a person for whom the State is responsible.'" *CHD*, 112 F.4th at 754 (quoting *Lugar*, 457 U.S. at 937); *see also O'Handley*, 62 F.4th at 1156. The analysis must "begin … by identifying the 'specific conduct of which the plaintiff complains.'" *CHD*, 112 F.4th at 754. Here, Castronuova vaguely challenges Twitter's alleged decision to shadow ban her account. AC ¶ 36. But she makes no attempt to allege that

Twitter exercised any state-created right or acted pursuant to any state-imposed rule of conduct in doing so.  "At bottom, [she] fail[s] to point to any governmental 'statute or policy' as the source of [her] harm."  *Kennedy v. Meta Platforms, Inc.*, 2024 WL 4031486, at *4 (N.D. Cal. Sept. 3, 2024).  That is "fatal to [her] state action claim."  *CHD*, 112 F.4th at 755 (citing *Lindke v. Freed*, 601 U.S. 187, 198 (2024)).

*First*, Castronuova cannot allege that Twitter was exercising a right or privilege created by the state in moderating her content because any alleged limitations placed on her account were expressly permitted by Twitter's Terms, through which Twitter reserves the right to remove content for violations of its Rules or for any reason whatsoever.  *See supra* p. 3 (citing Barnet Decl., Ex. A).  Thus, the "'source of the alleged constitutional harm' is not a state statute or policy but [a] particular private agreement."  *Belgau v. Inslee*, 975 F.3d 940, 946-947 (9th Cir. 2020) (no state created right under *Lugar* where "'the source of the alleged constitutional harm' is not a state statute or policy but the particular private agreements between the [parties]").  In *O'Handley*, the Ninth Circuit considered and rejected similar allegations that Twitter "limited access to [plaintiff's] posts or suspended his account" based on a user's "content and viewpoint."  62 F.4th at 1155-1156; AC ¶ 53 (alleging Twitter "implement[ed] censorship on viewpoints that the government deemed undesirable.").  The Ninth Circuit concluded that "Twitter's right to take those actions when enforcing its content-moderation policy was derived from its user agreement … not from any right conferred by the State."  *Id*.  This Court should do the same.

*Second*, Castronuova does not plausibly allege that Twitter enforced a "rule of conduct imposed by the State" when it allegedly limited Castronuova's account.  The Amended Complaint nowhere alleges that Twitter acted pursuant to *any* rule imposed by the state in allegedly moderating her content on Twitter.  Apart from a conclusory allegation based "[o]n information and belief" that "Defendants acted under direct pressure and influence from federal officials to suppress Plaintiff's speech" (AC ¶ 38), which cannot be credited, "the closest [Castronuova] comes to alleging a federal 'rule of conduct,'" *CHD*, 112 F.4th at 755, are her vague allegations that Twitter generally "collaborated with the federal government and the FBI" and "that there was regular communication with federal agencies" regarding content moderation generally.  AC ¶¶ 47

("the platform collaborated with the federal government and the FBI"), 49, 48 ("the company received and complied with numerous requests from the federal government to censor posts related to COVID-19.").  Just like "the CDC's identification of 'vaccine misinformation' and 'vaccine hesitancy'" in *CHD*, however, "th[e]se statements fall far short of suggesting any actionable federal 'rule' that [Twitter] was *required to follow*." *CHD*, 112 F.4th at 755 (emphasis added). And because Castronuova does not allege any specific content she posted that was ever blocked, banned, or limited—much less pursuant to any government-created right, privilege, or rule—she certainly has not alleged that such action by Twitter as to her content is "traceable to those generalized federal concerns about vaccine information," as required to satisfy *Lugar* prong one. *Id.*

### 2.    Castronuova fails to allege Twitter is a state actor.

Castronuova's failure to satisfy the first prong of *Lugar* alone dooms her state-action claim. But she also fails to plausibly allege the second prong, which requires that the private party "'fairly be said to be a state actor.'" *CHD*, 112 F.4th at 755; *O'Handley*, 62 F.4th at 1157.  The Amended Complaint advances two theories for why Twitter can be deemed a state actor: (i) joint action and (ii) nexus.  *See* AC ¶ 66 (alleging that "[t]he Non-Governmental Defendants engaged in joint action with the Government Defendants because Defendants' censorship activities were intertwined with the government's efforts to control public discourse."); *id.* ¶ 67 ("In the alternative, the Non-Governmental Defendants were coerced into suppressing speech due to explicit threats and pressure from federal officials"); *id.* ¶ 63 (concluding that Twitter's "private conduct may be fairly attributed to the state" when "there is a sufficiently close nexus between the state and the private conduct").  Both theories fail as a matter of settled law.

"[T]he Ninth Circuit has analyzed the joint action and governmental nexus theories in tandem." *Doe v. Google LLC*, 2021 WL 4864418, at *6 (N.D. Cal. Oct. 19, 2021), *aff'd*, 2022 WL 17077497 (9th Cir. Nov. 18, 2022) (citation omitted).  "The joint action test asks 'whether the government has so far insinuated itself into a position of interdependence with a private entity that the private entity must be recognized as a joint participant in the challenged activity.'" *CHD*, 112 F.4th at 755; *see also O'Handley*, 62 F.4th at 1159 (same).  "There are two different versions of

the nexus test": (1) whether there is "'pervasive entwinement of public institutions and public officials in [the private actor's] composition and workings,'" and (2) "whether government officials have 'exercised coercive power or [have] provided such significant encouragement … that the choice must in law be deemed to be that of the State.'" *O'Handley*, 62 F.4th at 1157. Castronuova has not plausibly alleged state action under either test.

The Amended Complaint does not plausibly allege *any* entwinement of federal officials and Twitter or that federal officials ever coerced Twitter to do anything.  Instead, Castronuova simply concludes that Defendants violated the Free Speech Clause of the First Amendment when they "acted jointly with the Government Defendants, and potentially other federal government officials, to censor specific viewpoints" (AC ¶ 63), and that such "actions were carried out under the coercive influence and direction of federal officials" (*id*. ¶ 52).  But the only factual support Castronuova can muster are generalized allegations of "government influence"—i.e., that Twitter was in "regular communication with federal agencies" and "received and complied with" certain unspecified government requests to moderate content "related to COVID-19."  *Id.* ¶¶ 48-49.

These threadbare allegations "suffer from a critical lack of specificity," failing to tie the core conduct that Castronuova challenges—limitation of her Twitter account "around November 2020"—to any action by the government at that time. *CHD*, 112 F.4th at 756; *see id.* ("[A] plaintiff must show some specificity to the understanding between the private actor and the government"). Indeed, the Amended Complaint is devoid of a *single* example of a Twitter post by Castronuova, let alone any posts that the Government Defendants either *knew* about or *directed* Twitter to limit. Lacking such facts, Castronuova's lone conclusory allegation, made "on information and belief," that "Defendants acted under direct pressure and influence from federal officials to suppress Plaintiff's speech" (AC ¶ 38) should be rejected. *See Iqbal*, 556 U.S. at 678 (explaining that courts need not accept "legal conclusions").  Castronuova's claim of state action as to Twitter boils down to allegations that various federal officials communicated with Twitter (and other social media platforms) about COVID-19 content, Twitter (and other platforms) removed some COVID-19 content, and one effect of Twitter allegedly shadow banning Castronuova's account was limited visibility of her posts criticizing the government's COVID-19 policies. AC ¶¶ 43-44, 48, 73. The

Ninth Circuit already has held that such allegations fall short of establishing state action. "Without plausible allegations of an agreement to take specific action," Twitter's conduct is not "fairly attributable to the government." *CHD*, 112 F.4th at 756. As in *CHD*, Castronuova's allegations do not make the inference that Twitter "took direction from [federal officials] about what content to censor" "plausible in light of the obvious alternative—that the government hoped that [Twitter] would cooperate because it ha[d] a similar view about the safety and efficacy of vaccines." *Id.* Nor has Castronuova plausibly alleged that Twitter took any action on her content because of government coercion. "All [Castronuova] has pleaded is that [Twitter] was aware of a generalized federal concern with misinformation on social media platforms and that [Twitter] took steps to address that concern." *Id.* at 760.

Indeed, courts repeatedly have rejected significantly more detailed allegations of joint action than Castronuova asserts here. For example, in *O'Handley*, the Ninth Circuit held that the plaintiff failed to allege state action where he alleged that Twitter suspended his account after state officials had specifically flagged *his Twitter content* through a partner support portal that Twitter used to expedite review of Tweets identified by "[a] limited number of government agencies and civil society groups." *O'Handley*, 62 F.4th at 1154; *see also, e.g.*, *CHD*, 112 F.4th at 786, n.11 (Collins, J., concurring) (noting that plaintiffs alleged that Meta and White House officials corresponded about the plaintiffs' content in particular); *Google*, 2021 WL 4864418, at *4-6 (dismissing joint action allegation that government officials "substantially encouraged, and threatened Defendants to remove the type of speech that Plaintiffs express" because such "allegations fail to plausibly plead a 'substantial degree of cooperative action' between Defendants and the government."); *Daniels v. Alphabet Inc.*, 2021 WL 1222166, at *6 (N.D. Cal. Mar. 31, 2021) (no joint action where plaintiff did not allege that "the federal government directed a particular result" with respect to the removal of content); *Fed. Agency of News LLC v. Facebook, Inc.*, 395 F. Supp. 3d 1295, 1312-1313 (N.D. Cal. 2019) (no joint action where plaintiff alleged that Facebook was "actively working" with and "providing information" to the government but "d[id] not allege that the government played any role in shutting down [plaintiff's] Facebook page"). This Court should likewise dismiss Castronuova's state-action claim.

1

**B.        Castronuova's Section 1985 Claim (Count II) Independently Fails**

2

Castronuova asserts that Twitter's alleged violation of the First Amendment constitutes a

3 violation of Section 1985(3). As just discussed, this claim fails for lack of state action.   But

4 Castronuova also fails to state a claim under Section 1985 for several additional reasons.

5

To plead a Section 1985(3) claim under the provision's Equal Protection Clause, a plaintiff

6 must show: (1) a conspiracy; (2) an act in furtherance of that conspiracy; (3) an intent to deprive

7 any person of the equal protection of, or equal privileges and immunities under the law; and (4) a

8 resulting injury to a legal right or privilege. *See Great Am. Fed. Sav. & Loan Ass'n v. Novotny*,

9 442 U.S. 366, 372 (1979); *see Kennedy*, 2024 WL 4031486, at *10-13 (explaining distinction

10 between Section 1985(3)'s Equal Protection Clause and Support or Advocacy Clause).   And

11 because Section 1985's "original purpose … was to enforce the rights of African Americans and

12 their supporters," *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005), a plaintiff must also

13 show, among other things, (5) that "some racial, or perhaps otherwise class-based, invidiously

14 discriminatory animus [lay] behind the conspirators' action," *Bray v. Alexandria Women's Health*

15 *Clinic*, 506 U.S. 263, 267-269 (1993).

16

Here, Castronuova fails to plead a conspiracy for the same reason she cannot satisfy the

17 joint action test.  *See O'Handley*, 62 F.4th at 1161 ("the test for proving a conspiracy between a

18 private party and the government to deprive an individual of constitutional rights under § 1985

19 tracks the inquiry under the conspiracy formulation of the joint action test").   And the Amended

20 Complaint is devoid of a *single* allegation that Twitter was motivated by racial or class-based

21 animus in allegedly limiting Castronuova's account.  Instead, the Amended Complaint simply

22 concludes that "Defendants acted under direct pressure and influence from federal officials to

23 suppress Plaintiff's speech."  AC ¶ 38.  But Castronuova's Section 1985 claim fails as a matter of

24 law because "political, non-racial conspiracies," are not actionable under Section 1985.  *United*

25 *Bhd. of Carpenters & Joiners of Am. v. Scott*, 463 U.S. 825, 834-836 (1983) (explaining that

26 extending Section 1985 to political speech would turn federal courts into "monitors of campaign

27 tactics in both state and federal elections"—a "role that [they] should not be quick to assume").

28

C.    **Even if Castronuova Could Allege A Constitutional Claim (Counts I-II), She Cannot Recover Any Remedy From Twitter**

Even if Castronuova could somehow overcome the many legal hurdles set forth above and plead a violation of her constitutional rights, she would have no remedy against Twitter because she cannot recover the damages or injunctive relief she seeks.  AC at 24.

*First*, Castronuova cannot recover damages on her First Amendment claims against Twitter.  The Amended Complaint variously seeks "compensatory damages" and "punitive damages" from Twitter based on purported violations of Castronuova's constitutional rights and the vague conclusion that "shadow banning" her account somehow harmed her business.  *See, e.g.*, AC at 24.  But such damages are unavailable as a matter of law because there is no statute that authorizes damages for alleged constitutional violations against social media companies like Twitter.  *See supra* § I.B (explaining that § 1985 provides no vehicle for Castronuova's free speech claims).  Any claim for damages must instead rely on an implied cause of action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  But post-*Bivens* decisions from the U.S. Supreme Court and the Ninth Circuit "foreclose[] an implied cause of action for damages against a private corporation for First Amendment violations."  *Trump v. Twitter Inc.*, 2023 WL 1997921, at *3 (N.D. Cal. Feb. 14, 2023) (citation omitted) (no *Bivens* cause of action for First Amendment claims); *see also Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 71 (2001) (no *Bivens* claim can be asserted against a "corporate defendant").  Accordingly, "[e]ven assuming just for present purposes that [Castronuova] had shown that Twitter was in effect operating as the government under the 'state-action doctrine' … there is no legal basis for damages against Twitter."  *Trump*, 2023 WL 1997921, at *3.

*Second*, Castronuova also cannot obtain injunctive relief from Twitter.  AC at 24.  As an initial matter, she lacks standing to pursue injunctive relief.  "[B]ecause [she] request[s] forward-looking relief, [she] must face 'a real and immediate threat of repeated injury.'"  *Murthy*, 603 U.S. at 57.  In this context, that means Castronuova "must show a substantial risk that, in the near future, [Twitter] will restrict [her] speech … in response to the actions of" the federal government.  *Id.*  Castronuova has not plausibly alleged such a risk.  As explained *supra* p. 4, it is apparent from

1    Twitter's publicly available website that Castronuova's account and posts currently can be viewed

2    by individuals who are not following her. Moreover, because Castronuova's allegations of past

3    harm all stem from COVID-19 content and the "communications that took place in 2021 ha[ve]

4    considerably subsided," "[i]t is … very difficult for [Castronuova] to show that she faces future

5    harm that is traceable to" the federal government. *Murthy*, 603 U.S. at 72-73. Castronuova does

6    not allege that her content has fallen, or is likely to fall, in any category of concern to the federal

7    government at this time or in the future. *Id.* at 73.

8        Regardless, Castronuova is not entitled to any of the injunctive relief she seeks, which

9    would modify how Twitter presents her content on its private platform. "[I]n case after case, the

10   [Supreme] Court has barred the government from forcing a private speaker to present views it

11   wished to spurn in order to rejigger the expressive realm." *NetChoice*, 603 U.S. at 733. This rule

12   applies to courts, just like any other government actor. Courts therefore refuse to award any

13   remedy—including an injunction—that would trammel on another party's First Amendment

14   rights, unless the remedy satisfies heightened scrutiny. *See Madsen v. Women's Health Ctr., Inc.*,

15   512 U.S. 753, 765 (1994). Castronuova's requested relief unjustifiably intrudes on Twitter's First

16   Amendment rights and could not satisfy heightened scrutiny.

17       As the Supreme Court recently held, "[a] private party's collection of third-party content

18   into a single speech product … is itself expressive, and intrusion into that activity must be specially

19   justified under the First Amendment." *NetChoice*, 603 U.S. at 729-730. That includes a provider

20   of an interactive computer service deciding to "remove, alter, organize, prioritize, or disclaim

21   posts" from third-party users; the First Amendment protects "exactly the[se] kind[s] of editorial

22   judgments." *Id.* at 718, 726-731. Castronuova's requested injunction would infringe on exactly

23   these types of protected expressive activities. She seeks "injunctive relief to prevent further

24   suppression of her speech by Defendants." AC ¶ 76. That injunction would be antithetical to

25   Twitter's right to moderate content on its platform consistent with its protected editorial judgment.

26   And there is no compelling state interest in ordering Twitter to publish Castronuova's posts (which

27   are public in any event), as would be necessary to satisfy heightened scrutiny.

28       Nor can Castronuova's allegations of state action redeem the unconstitutional injunctive

relief she seeks.  Setting aside her failure to allege state action, *supra* § I.A, the Ninth Circuit has long recognized that "[e]ven if state action [is] present" in a private publisher's editorial decisions, the private entity "still [has] the freedom to exercise subjective editorial discretion" over speech it disseminates.  *Assocs. & Aldrich Co. v. Times Mirror Co.*, 440 F.2d 133, 135 (9th Cir. 1971).  The Ninth Circuit has held that even where a private party's initial action was tainted by government coercion, "[i]t does not follow … that [the private actor] may never thereafter decide independently to exclude [a third party's] messages from its … network.  It only follows that the *state* may never *induce* [the private party] to do so." *Carlin Comm'ns, Inc. v. Mountain States Tel. & Tel. Co.*, 827 F.2d 1291, 1296-1297 (9th Cir. 1987).  Therefore, the proper parties for the injunctive relief that Castronuova seeks—if any—are the Government Defendants.  *See CHD*, 112 F.4th at 759 ("[T]here is reason to doubt that a purely private actor like Meta, which was the victim of the alleged coercion, would be the appropriate defendant").

## II.    Castronuova Does Not Plausibly Allege State-Law Tort Claims (Counts III, V-VII)

### A.    Castronuova Has No Claim Under The UCL (Count III)

Borrowing from her allegations that Defendants "engaged in actions that violate federal civil rights laws, including the Free Speech Clause of the First Amendment and 42 U.S.C. § 1985," Castronuova asserts a new claim under the California unfair competition law ("UCL") (Count III)—that Facebook and Twitter "conspir[ed] to suppress Plaintiff's speech."  AC ¶¶ 89-95.  This claim fails for multiple reasons.  To state a claim under the UCL, a plaintiff must allege an "unlawful, unfair, or fraudulent business act or practice" or "unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.  Under any of these theories, a plaintiff must demonstrate that a "defendant engaged in one of the practices the statute prohibits and, as a result of the conduct, he or she suffered actual injury."  *Taiming Zhang v. Twitter Inc.*, 2023 WL 5493823, at *7 (N.D. Cal. Aug. 23, 2023).  Moreover, as a threshold requirement, a plaintiff must allege standing by "(1) establish[ing] a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show[ing] that that *economic injury* was the result of, i.e., *caused by*, the unfair business practice or false advertising."  *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 322 (2011); Cal. Bus. & Prof. Code § 17204.

1    Castronuova's UCL claim fails because she does not allege any "unlawful, unfair, or

2    fraudulent business act."  Her claim fails under the unlawful prong because she has not plausibly

3    alleged that Twitter violated the First Amendment or Section 1985, as explained above.  *See Zhang*,

4    2023 WL 5493823, at *8 (holding that UCL claim brought under the unlawful prong failed where

5    "the underlying claims of unlawful conduct … fail to state a claim").  Her claim would fail under

6    the fraudulent prong because she has not alleged any deceptive conduct by Twitter.  As discussed

7    *infra* § III, any limitation on her account was at all times expressly permitted by Twitter's Terms,

8    which reserve the right to suspend or terminate accounts and to create limits on use at any time.

9    *Compare* AC ¶¶ 89-95 (alleging "discriminatory enforcement of … content moderation policies"),

10   *with* Barnet Decl., Ex. A (Terms) at 3, 5.  As another court in this district has explained in another

11   case involving shadow banning, "[a] good argument can be made that plaintiffs did not plausibly

12   allege deceptive conduct by Twitter for purposes of … the UCL" because Twitter's "TOS

13   expressly states that Twitter may suspend or terminate an account 'at any time.'"  *Trump v. Twitter*

14   *Inc.*, 602 F. Supp. 3d 1213, 1227 (N.D. Cal. 2022).  And her claim fails under the unfair prong

15   because that claim is based on Twitter's alleged "conspir[acy] to suppress Plaintiff's speech," AC

16   ¶ 102, and where "the 'conduct that comprises the UCL fraudulent or unlawful prongs is the same

17   conduct as the unfair prong, the unfair prong of the UCL cannot survive if the claims under the

18   other two prongs of the UCL do not survive.'"  *Moates v. Facebook Inc.*, 2024 WL 2853976, at

19   *3 (N.D. Cal. Apr. 3, 2024).

20   Castronuova's UCL claim also fails for lack of standing.  "The 'lost money or property'

21   requirement [of the UCL] … requires a plaintiff to demonstrate 'some form of economic injury'

22   as a result of his transactions with the defendant."  *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104

23   (9th Cir. 2013).  Two of Castronuova's claimed injuries—a "hind[rance of] her ability to advocate

24   for her beliefs" and "damage[]" to her campaign for public office, AC ¶¶ 57, 59—are non-

25   economic and so do not satisfy this requirement.  Her other claimed injuries—"depriv[ation] of

26   *potential* paid speaking engagements and appearances" and "lost *opportunities* for business

27

28

collaborations," AC ¶¶ 136-142—are too speculative to satisfy the requirement.[6] *See Zilberstein v. Petersen*, No. 18VEC00182, 2023 Cal. Super. LEXIS 24920, at *8 (Apr. 27, 2023) (dismissing UCL claim for lack of standing based on plaintiff's "indirect and speculative" claim that it "*may have lost income* because of publication of the documents [by defendant]") (emphasis added).

## B.    Castronuova's Implied Covenant Claim (Count V) Also Fails

Castronuova's claim for breach of the implied covenant of good faith and fair dealing (Count V) fares no better.  "A plaintiff asserting a claim for breach of the implied covenant of good faith and fair dealing must allege the following elements: (1) the existence of a contract; (2) the plaintiff did all, or substantially all of the significant things the contract required; (3) the conditions required for the defendant's performance had occurred; (4) the defendant unfairly interfered with the plaintiffs right to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct."  *Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1048 (N.D. Cal. 2020).   This claim fails because the implied term Castronuova purports to identify is contradicted by the express terms of her agreement with Twitter and because the claim relies on impermissible group pleading.

*First*, Castronuova's implied covenant claim fails because it reads in a term to her agreement with Twitter that is contradicted by the express terms of that agreement.  "[A]s a general matter, implied terms should never be read to vary express terms" of a contract.  *Carma Devs., Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 374 (1992).  Similarly, the implied covenant "'cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement.'"  *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 350 (2000).  Yet that is precisely what Castronuova tries to do.  She claims that "Defendants" "remov[ed] posts and suspend[ed] accounts based on the viewpoints expressed, which contradicted Defendants' stated policies of providing a platform for free expression and open discourse," and that

---

[6] In what appears to be a fragment of an allegation copy-pasted from another document, the Amended Complaint alleges that "Defendant's conduct caused Plaintiff to lose out financially due to the prevention of fraudulent transfers and the failure to maintain security measures."  AC ¶ 101. But none of Castronuova's claims remotely involve "fraudulent transfers" or "failure to maintain security measures," and the Court should thus disregard this irrelevant allegation.

"Defendants" "failed to provide a reasonable and good-faith investigation into the suspensions and content removals." AC ¶¶ 114, 116. But she does not cite a single provision of Twitter's Terms conferring such "rights" (AC ¶ 118) to use the platform regardless of viewpoint or to receive a "reasonable and good-faith investigation" of content-moderation decisions. Nor could she cite such a provision, as Twitter's Terms expressly (1) *disclaim* any such right to access the platform, and (2) *allow* Twitter, in its "sole discretion," to stop providing access to the platform. *See* Barnet Decl., Ex. A (Terms) at 3, 5. Accordingly, because Twitter was at all times permitted by its Terms to do that which Castronuova alleges, her implied covenant claim must fail. *See Mercola.com, LLC v. Google LLC*, 2023 WL 5680112, at *6 (N.D. Cal. Sept. 4, 2023) (dismissing implied covenant claim based on alleged "failure to … allow the plaintiffs to access the content" because "YouTube's actions were permitted by [its] Terms.").[7]

*Second*, Castronuova's conclusory allegations in support of her implied covenant claim fall well short of basic notice pleading standards and fail under Rule 8. As discussed, Castronuova relies on impermissible group pleading to vaguely conclude that "Defendants" collectively breached the implied covenant by "removing posts and suspending accounts" (AC ¶ 114), but her supporting allegations say nothing about Twitter ever "removing" or "suspending" content on its platform. *See generally* AC. Moreover, Castronuova claims in conclusory fashion that "Defendants cited vague and pretextual reasons such as 'misinformation' and 'violations of community standards' to justify their actions" (AC ¶ 115), but nowhere alleges any justification provided by Twitter for the alleged limitations placed on her account.

## C. Castronuova Cannot Allege Intentional Interference With Contractual Relations Or Prospective Economic Relations (Count VI-VII)

Equally deficient are Castronuova's claims that Twitter somehow committed "Intentional Interference with Contractual Relations" (Count VI) and "Intentional Interference with

---

[7] Castronuova engages in impermissible group pleading by referencing "Defendants" and "Facebook and Twitter" interchangeably, even when her allegations plainly refer to the actions of only one defendant. *E.g.*, AC ¶¶ 113-115. Courts in the Ninth Circuit routinely reject such group pleading. *See Gazaway v. Nelson*, 2024 WL 3381036, at *2 (N.D. Cal. July 10, 2024) (dismissing claims under Rule 8(a) where "the complaint repeats group allegations … and lacks the differentiated allegations … required by Rule 8").

Prospective Economic Relations" (Count VII) by allegedly limiting her account.  AC ¶¶ 121-144.  A plaintiff alleging intentional interference with contractual relations must plead "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Codexis, Inc. v. Enzymeworks, Inc.*, 2016 WL 4241909, at \*4 (N.D. Cal. Aug. 11, 2016).  Similarly, a plaintiff alleging interference with prospective economic relations must plead "'(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the defendant[].'" *Id.* at \*6.  These claims fail for multiple reasons.

*First*, both claims fail because Castronuova does not plausibly allege that Twitter had knowledge of any contract or economic relationship, let alone intentionally interfered with any such contract or relationship.  While Castronuova vaguely concludes that Defendants interfered with contracts and relationships she maintained with "The Gateway Pundit" and "Newsmax" (AC ¶¶ 121-133, 135) and with unidentified "personal and business connections," (*id.* ¶ 58), she does not plausibly allege *any* facts supporting either knowledge of or intentional interference with those contracts or relationships by Twitter.[8]

Unable to plead knowledge by Twitter of these alleged contracts or relationships, Castronuova instead raises a conclusory *non-sequitur*—that "Twitter had actual knowledge of Plaintiff's *status as a reporter, journalist, public figure and influencer*" as "evidenced by Plaintiff's extensive use of the platform[]."  AC ¶ 126 (emphasis added).  But this conclusory

---

[8] Castronuova vaguely alleges "prospective economic opportunities, including but not limited to paid speaking engagements, promotional contracts, and business collaborations."  AC ¶¶ 135-136 (Count VII).  Lacking any factual support linking her Twitter account to such "opportunities," these unsupported allegations cannot be credited.  *See Havensight Cap. LLC v. Nike, Inc.*, No. CV 14-7153-R, 2014 U.S. Dist. LEXIS 196123, at \*4 (C.D. Cal. Nov. 19, 2014) (rejecting allegations of intentional interference where "[p]laintiff has not alleged facts showing an economic relationship" based on "bare legal conclusions" and "vague allegations that are too speculative to state a claim").

assertion says nothing about Twitter's knowledge of the *contractual or economic relationships* Castronuova alleges were interfered with, as required to state a claim.  *Swipe & Bite, Inc. v. Chow*, 147 F. Supp. 3d 924, 935 (N.D. Cal. 2015) (dismissing claim for interference with contract because "[p]laintiff merely alleges that [defendant] knew of the agreements [plaintiff] had" but "does not allege any *facts* showing that [defendant] had knowledge of the agreements with these specific customers or of the valid contract with [a third party]"); *id.* (dismissing claim for interference with prospective economic advantage because plaintiff merely "alleges that Defendant[s] … 'were both aware of the [plaintiff's] prospects,'" but "again fails to allege facts showing that [defendant] had knowledge of these economic relationships between [plaintiff] and third parties.").   And Castronuova's last-ditch attempt to plead knowledge by claiming "Defendants knew or should have known of Plaintiff's contracts … due to Plaintiff's extensive use of the platform[]" (AC ¶ 127)—along with many millions of other users—is plainly implausible and only confirms her failure to identify *facts* to support such knowledge.  *See Havensight Cap. LLC v. Nike, Inc.*, No. CV 14-7153-R, 2014 U.S. Dist. LEXIS 196123, at *4 (C.D. Cal. Nov. 19, 2014) (dismissing intentional interference claim because "[p]laintiff makes bare legal conclusions that Defendant knew about Plaintiff's business relationships without pleading any actual facts to support that claim").

     *Second*, Castronuova's intentional interference claims independently fail because she has not alleged any actual disruption of her contracts or economic relationships, much less any disruption proximately caused by Twitter.  The Amended Complaint vaguely alleges that Castronuova was "required … to leverage her public platform and social media presence" and that by "limiting her ability to reach her audience, Defendants directly interfered with her contractual relationships," which "thereby impact[ed] her professional reputation and reach."  AC ¶¶ 124-125, 130; *see also id.* ¶¶ 57-58 (similar).  But Castronuova "does not provide the terms of any contract [she] claims to have had with either [The Gateway Pundit] or [Newsmax]" and "[w]ithout these contracts, the Court cannot determine whether [Twitter's] alleged behavior led to a breach or disruption thereof."  *Automated Pet Care Prods., LLC v. PurLife Brands, Inc.*, 703 F. Supp. 3d 1022, 1035 (N.D. Cal. 2023) (dismissing intentional interference with contract claim).  Nor does

Castronuova allege similar facts—rather than legal conclusions and vague claims of "personal and business connections," AC ¶¶ 58-59—to suggest any actual "interference" with any specific economic relationships. *Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1134 (9th Cir. 2015) (affirming dismissal of tortious interference claim where plaintiff "d[id] not allege  any specific resultant disruption to contractual or economic relationships"); *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008) (affirming dismissal where plaintiff "does not allege, for example, that it lost a contract nor that a negotiation with a Customer failed").[9]

Accordingly, Castronuova's failure to allege any knowledge by Twitter of a contract or business relationship—much less actual interference with the same—is fatal to Counts VI and VII.

## III.    The Limitation Of Liability And Waiver Of Liability Clauses In The Terms Bar All Of Castronuova's Claims

In addition to the many legal defects identified above, all of Castronuova's claims are barred by both the limitation of liability and waiver of liability provisions that she agreed to in Twitter's Terms. *First*, Castronuova's claims are barred by the plain language of the limitation of liability clause, which provides that Twitter "shall not be liable for any indirect, incidental, special, consequential or punitive damages … resulting from … your access to or use of or inability to access or use the services." Barnet Decl., Ex. A at 8. Castronuova's claims fall under this provision because she seeks indirect damages based on her inability to access or use certain services on Twitter. *See, e.g.*, AC ¶¶ 36-37 (alleging inability to access features on Twitter, including "Plaintiff's content"); *id.* ¶¶ 87-88, 131, 133 (variously seeking "monetary damages," "compensatory damages," "punitive damages," and "consequential damages" for, among other

---

[9] In yet another instance of impermissible group pleading, Castronuova vaguely alleges that "Defendants disrupted Plaintiff's ability to secure and maintain beneficial economic relationships related to her political and public activities." AC ¶ 138; *see also id* ¶ 59. But unlike her allegations as to Facebook, where Castronuova claims "multiple social media pages" and "groups" were suspended, including political and campaign pages (*id.* ¶¶ 26-31), the Amended Complaint contains no similar allegations as to Twitter. *Compare id.* ¶ 59 (alleging "suspension" of multiple Facebook "accounts[]" and an "inability to communicate with her constituents"), *with* ¶¶ 73, 36-37 (alleging Twitter "limit[ed] the visibility" of posts that "opposed lockdowns and vaccine mandates" and the "effects of … governments' policies").

things, inability to "promote her work" on Twitter).

The limitation of liability clause is a basis for dismissal. Such clauses "'have long been recognized as valid in California'" and may be used at the pleading stage to reject a party's claims. *Lewis v. YouTube, LLC*, 244 Cal. App. 4th 118, 125 (2015) (enforcing limitation of liability clause and affirming dismissal). These clauses are particularly "appropriate when one party is offering a service for free to the public," as Twitter does here. *Id.*; *see also Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 36 (2021) (enforcing the limitation of liability clause in the Twitter Terms). Courts routinely enforce online platforms' limitation of liability clauses in suits—like Castronuova's here—that arise out of conduct protected by the terms of service. *See Darnaa, LLC v. Google Inc.*, 236 F. Supp. 3d 1116, 1123 (N.D. Cal. 2017) (enforcing YouTube's limitation of liability clause and dismissing complaint), *aff'd*, 756 F. App'x 674 (9th Cir. 2018).

*Second*, Castronuova's claims are also barred by the waiver of liability clause. She seeks to hold Twitter liable for allegedly shadow banning her content, but the waiver of liability clause provides that "[Twitter] make[s] no warranty or representation and disclaim[s] all responsibility and liability for … the deletion of … any Content and other communications[.]" Barnet Decl., Ex. A at 8. Courts in the Ninth Circuit have dismissed claims based on analogous clauses. *Glair v. Nat'l Evaluation Servs.*, 2009 WL 10672610, at *4 (C.D. Cal. Apr. 27, 2009), *aff'd*, 424 F. App'x 653 (9th Cir. 2011). The same result is warranted here.

## IV. Castronuova's Claims Are Independently Barred By The First Amendment And Section 230

Separate from and in addition to the many claim-specific defects discussed above, Castronuova's claims against Twitter are all barred by the First Amendment and, with respect to her tort claims, Section 230. Both of these legal grounds protect Twitter's right to exercise editorial control over third-party content on its platform, just as it is alleged to have done here.

### A. Twitter's Own First Amendment Rights Independently Foreclose All Of Castronuova's Claims

As explained above, the Supreme Court recently confirmed that online platforms like Twitter have a First Amendment right to decide to "remove, alter, organize, prioritize, or disclaim posts" from third-party users; the First Amendment protects "exactly the[se] kind[s] of editorial

1    judgments." *NetChoice*, 603 U.S. at 718, 726-731.  The Supreme Court held that these protections

2    extend to "removing a post."  *Id.* at 735-736.  Because each of Castronuova's claims seeks to hold

3    Twitter liable for its alleged "exercise [of] editorial judgment" by "removing or deprioritizing

4    content or users" on its private social media platform, *NetChoice, LLC v. Att'y Gen.*, 34 F.4th 1196,

5    1222 (11th Cir. 2022), her claims would infringe on precisely these sorts of protected expressive

6    activities and are barred.  *See* AC ¶¶ 34, 36-37.  "[T]he First Amendment … can serve as a defense

7    in state tort suits."  *Snyder v. Phelps*, 562 U.S. 443, 451 (2011).  Castronuova's First Amendment

8    claims likewise cannot overcome Twitter's own fundamental First Amendment rights, as discussed

9    *supra* § I.C.

10       **B.**    **Section 230 Bars Castronuova's State Law Tort Claims (Counts III, V-VII)**

11          Section 230 states: "No provider … of an interactive computer service shall be treated as

12   the publisher or speaker of any information provided by another information content provider."

13   47 U.S.C. § 230(c)(1).  The Ninth Circuit has repeatedly recognized that Section 230 immunizes

14   a webhost who exercises "a publisher's traditional editorial functions"—such as "deciding whether

15   to publish, withdraw, postpone, or alter content," *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th

16   Cir. 2009), *as amended* (Sept. 28, 2009).  Courts thus routinely hold that Section 230(c)(1) bars

17   the kind of claims at issue here: claims that seek to impose liability for an interactive computer

18   service provider's "decision to block access to—or, in other words, to refuse to publish"—user

19   content.  *Sikhs for Just. "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1094-1095 (N.D.

20   Cal. 2015), *aff'd*, 697 F. App'x 526 (9th Cir. 2017) (mem.).  Under Section 230's three-part test,

21   "[i]mmunity from liability exists for '(1) a provider or user of an interactive computer service (2)

22   whom a plaintiff seeks to treat ... as a publisher or speaker (3) of information provided by another

23   information content provider.'"  *Dyroff v. Ultimate Software Grp., Inc*., 934 F.3d 1093, 1097 (9th

24   Cir. 2019).  Castronuova's tort claims (Counts III-VII) are all barred under this test.

25          **Twitter is an "interactive computer service" provider.**  Section 230 broadly defines

26   "interactive computer service" as "any information service, system, or access software provider

27   that provides or enables computer access by multiple users to a computer … service."  47 U.S.C.

28   § 230(f)(2).  As courts repeatedly have held, Twitter is an "interactive computer service" provider.

---

- 23 -

1   *See*, *e.g.*, *Al-Ahmed v. Twitter, Inc.*, 603 F. Supp. 3d 857, 880-881 (N.D. Cal. 2022) ("'Twitter …

2   provides the prototypical service entitling it to protections of Section 230' and 'every decision the

3   Court has seen to consider the issue has treated Twitter as an interactive computer service provider,

4   even at the motion to dismiss stage.'").

5          **Castronuova's claims seek to treat Twitter as a "publisher."**   The second prong of

6   Section 230 is likewise satisfied because Castronuova's claims seek to hold Twitter liable for

7   deciding "to exclude material that third parties s[ought] to post online," *Barnes*, 570 F.3d at 1102-

8   1103, including its alleged decisions to "shadow ban," block, or remove Castronuova's account or

9   posts from its platform.  *See Zhang*, 2023 WL 5493823, at *4 ("All of Plaintiff's claims seek to

10  treat Twitter as a publisher" under Section 230, since "all his claims relate to the suspension of his

11  account … whether they are styled as breach of contract, tort, or fraud claims."); *Fields v. Twitter,

12  Inc.*, 217 F. Supp. 3d 1116, 1124 (N.D. Cal. 2016) ("[T]he decision to furnish an account, or

13  prohibit a particular user from obtaining an account, is itself publishing activity."), *aff'd*, 881 F.3d

14  739 (9th Cir. 2018).

15         Courts in the Ninth Circuit agree that Section 230 immunizes the very allegations

16  Castronuova makes here—i.e., that a social media company banned or blocked a user's account.

17  *See*, *e.g.*, *Riggs v. MySpace, Inc.*, 444 F. App'x 986, 987 (9th Cir. 2011) (affirming dismissal of

18  claims "arising from MySpace's decisions to delete [plaintiff's] user profiles" as "precluded" by

19  Section 230).  Castronuova's claims stem from the same protected publisher conduct—Twitter's

20  alleged "shadow banning" of her account.

21         **Castronuova's account and content is information provided by another "information

22  content provider."**  An "information content provider" is "any person or entity that is responsible,

23  in whole or in part, for the creation or development of information provided through the Internet."

24  47 U.S.C. § 230(f)(3).  Castronuova's account and the content she posted on Twitter constitute

25  "information provided by another information content provider" under the third prong of the

26  Section 230 analysis.  *Id.* § 230(c)(1); *see also Al-Ahmed*, 603 F. Supp. 3d at 881 (third prong

27  satisfied where plaintiff's "claims against Twitter are related to the suspension of his account").

28         Section 230 thus immunizes Twitter from Plaintiff's tort claims, which seek to hold Twitter

liable for its alleged decisions about what third-party content to block or "ban" from its platform.

## V.    Dismissal With Prejudice Is Warranted

For all the reasons discussed herein, Castronuova cannot plead any set of facts that would overcome the many legal hurdles to her claims.  Twitter has repeatedly put Castronuova on notice of the defects of her claims, including in a May 3, 2024 letter pointing out that Castronuova's posts are in fact visible to individuals who do not follow her and in its motion to dismiss the original complaint.  Her amended complaint, which cures none of these deficiencies and adds baseless claims, only confirms that amendment would be futile.  Accordingly, dismissal with prejudice is warranted.  *See O'Handley*, 62 F.4th at 1164 (affirming dismissal with prejudice).

CONCLUSION

For the foregoing reasons, Twitter respectfully requests that this Court dismiss the Amended Complaint as to Twitter, in its entirety and with prejudice.

DATED: January 10, 2025                    Respectfully submitted,

                                          WILMER CUTLER PICKERING
                                           HALE AND DORR LLP

                                          By: */s/ Ari Holtzblatt*

                                          ARI HOLTZBLATT (SBN 354631)
                                          EMILY BARNET (*pro hac vice*)
                                          KYLE T. EDWARDS (SBN 323952)

                                          *Attorneys for Defendant X Corp.*

1

<u>**CERTIFICATE OF SERVICE**</u>

2

   I hereby certify that on January 10, 2025, I caused the foregoing to be filed electronically

3

with the Clerk of Court and to be served via the Court's Electronic Filing System upon all counsel

4

of record.

5

6

7

8

9

Dated: January 10, 2025       By: */s/ Ari Holtzblatt*

10

                   Ari Holtzblatt

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28