**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **CARA CASTRONUOVA,**<br><br>　　　　Plaintiff,<br><br>　v.<br><br>**META PLATFORMS, INC., ET AL.,**<br><br>　　　　Defendants. | Case No.: 4:24-cv-02523-YGR<br><br>**ORDER GRANTING DEFENDANT META PLATFORMS, INC.'S MOTION TO DISMISS;**<br><br>**ORDER GRANTING DEFENDANT X CORP.'S MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 83, 84 |

Plaintiff Cara Castronuova brings this action against defendants Meta Platforms, Inc. ("Meta"), X Corp., the U.S. Department of Health and Human Services, and the U.S. Office of Management and Budget. Plaintiff asserts multiple claims based on an alleged conspiracy between the social media company defendants and the federal government to censor conservative voices during the COVID-19 pandemic.

Defendants Meta and X. Corp. each move to dismiss.

Having carefully considered the pleadings and papers submitted, and for the reasons set forth below, the Court **GRANTS WITH PREJUDICE** Meta and X Corp.'s motions to dismiss.[1]

**I.　BACKGROUND**

　**A.　Factual Background**

The First Amended Complaint alleges as follows:

Defendants Meta and X Corp. are California-based corporations that operate social media platforms. At issue here is Meta's platform Facebook and X. Corp.'s platform X (formerly known as "Twitter"). (Dkt. No. 82, First Amended Complaint ("FAC") ¶¶ 12, 13, 39.)

Plaintiff Cara Castronuova is a public figure who initially gained fame as an athlete and actress before becoming a reporter. (*Id.* ¶ 19.)

---

[1] Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court finds this motion appropriate for decision without oral argument.

1    Plaintiff is also "an outspoken advocate for civil liberties." (*Id.* ¶ 20.) As part of her
2  advocacy, plaintiff organized rallies in support of individuals arrested for the January 6 United
3  States Capitol attack, publicly criticized the government's COVID-19 lockdowns and vaccine
4  mandates, and used her personal social media accounts and several "fan page[s]" to "raise awareness
5  of the adverse effects" of policies she opposed. (*Id.* ¶¶ 22–26.)

6    Meta permanently suspended plaintiff's personal Facebook account on or around November
7  2020 without warning. (*Id.* ¶ 31.) As a result, plaintiff lost access to all of the social media pages she
8  managed, including her political activist pages. (*Id.*) Plaintiff's content opposing the government's
9  COVID-19 restrictions was also flagged and removed "under vague justifications related to
10 'community standards' and 'misinformation.'" (*Id.* ¶ 34.)

11   X Corp. "shadow banned" plaintiff's X account on or around November 2020, which meant
12 that her posts became invisible to all but those users who were already following her. (*Id.* ¶ 36.)
13 Plaintiff's content opposing the government's COVID-19 restrictions and vaccine mandates "was
14 flagged as 'dangerous,' hidden, or blocked altogether." (*Id.* ¶ 37.)

15   Plaintiff alleges, on information and belief, that defendants "acted under direct pressure and
16 influence from federal officials to suppress Plaintiff's speech," which reflects "systemic viewpoint
17 discrimination against those who expressed disagreement with the government's COVID-19
18 policies." (*Id.* ¶¶ 38, 56.) To support this allegation, plaintiff references several statements by Meta,
19 X Corp., and federal officials regarding content enforcement during the COVID-19 pandemic. For
20 instance, in a leaked draft email dated April 2021, a Meta executive wrote that Facebook was
21 "facing continued pressure from external stakeholders, including the [Biden] White House . . . to
22 remove COVID-19 vaccine discouraging content." (*Id.* ¶ 41.) In a July 2021 press briefing, former
23 White House Press Secretary Jen Psaki and Surgeon General Vivek Murthy said that the White
24 House was in "regular touch" with social media platforms, including Facebook, to flag and remove
25 content deemed "misinformation" about COVID-19. (*Id.* ¶¶ 42–43.) In an August 2024 letter to
26 United States Representative Jim Jordan, Meta CEO Mark Zuckerberg "admitted that the . . . federal
27 government repeatedly pressured Meta's teams to censor certain COVID-19 content which did not
28 align with the government's narrative." (*Id.* ¶ 44.)

2

Like Meta, X Corp. also faced "significant pressure from the federal government to censor content and terminate accounts of individuals who expressed viewpoints opposing the government's narrative on the COVID-19 pandemic." (*Id.* ¶ 69.) For instance, during a congressional hearing, X Corp.'s former Chief Legal Officer "admitted that the company received and complied with numerous requests from the federal government to censor posts related to COVID-19 that contradicted the official narrative." (*Id.* ¶ 48.) X Corp.'s former head of Trust and Safety also "testified [to Congress] . . . that [X Corp.] moderated content under government influence." (*Id.* ¶ 49.)

Plaintiff alleges that defendants' restrictions over her social media accounts have caused "irreparable harm to her professional and personal reputation." (*Id.* ¶ 60) Specifically, in terms of plaintiff's journalism career and political activism, defendants' actions "effectively silenced her voice and hindered her ability to advocate for her beliefs," which has had "devastating impacts on her professional and political activities." (*Id.* ¶ 57.) In terms of her career as a licensed real estate professional, defendants' actions "significantly impaired her ability to operate and expand her [real estate] business, causing substantial economic harm." (*Id.* ¶ 27.) Finally, because plaintiff was also running for public office at the time of her account's suspension and shadow banning, defendants' actions "severely damaged her campaign, contributing to her loss in a close race against an opponent who had full access to social media platforms." (*Id.* ¶ 59.)

**B.  Procedural Background**

Plaintiff asserts six counts[2] against Meta and X Corp., namely (Count I) violations of the Free Speech Clause of the First Amendment to the U.S. Constitution, (Count II) conspiracy to interfere with civil rights under 42 U.S.C. § 1985, (Count III) violations of California's Unfair Competition Law ("UCL"), (Count V) breach of implied covenant of good faith and fair dealing, (Count VI) intentional interference with contractual relations, and (Count VII) intentional interference with prospective economic relations.

---

[2] The FAC does not include a "Count IV" and jumps directly from Count III to Count V. For clarity and consistency, the Court will refer to the claims using the numbering set forth in the FAC.

Plaintiff asserts all six causes of action against Meta and X Corp., and asserts only Counts I and II against the government defendants.

Plaintiff seeks monetary damages, an injunction "enjoining defendants from removing or suspending social media posts and accounts at the direction of the federal government," and declaratory relief. (*Id.* ¶¶ 24–25.)

## II. LEGAL FRAMEWORK

In evaluating a motion to dismiss, the Court accepts factual allegations in a complaint as true and construes them in the light most favorable to the plaintiff. *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886–87 (9th Cir. 2018). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).) Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. To prevail, defendants must show either the "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *See Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

## III. ANALYSIS

### A. Section 230

As a threshold matter, Meta argues that Section 230, 47 U.S.C. Section 230, of the Communications Decency Act ("CDA"), bars all liability, while X Corp. argues that Section 230 bars plaintiff's state law tort claims. Plaintiff disagrees.

Section 230 states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Although "[S]ection 230 is an affirmative defense," "defenses routinely serve as a basis for granting Rule 12(b)(6) motions where the defense is apparent from the face of the [c]omplaint." *Goddard v. Google, Inc.*, 640 F.Supp.2d 1193, 1199 n.5 (N.D. Cal. 2009).

In *Barnes v. Yahoo!, Inc*, the Ninth Circuit has articulated a three-prong test for determining if a claim is entitled to Section 230 immunity:

4

> [Section 230(c)(1)] only protects from liability (1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider.

570 F.3d 1096, 1100-01 (9th Cir. 2009), *as amended* (Sept. 28, 2009) (footnotes omitted).

The Ninth Circuit has also clarified that "[Section 230]'s protection also extends to federal law causes of action." *Id.* at 1097 (citing *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157 (9th Cir. 2008)). "[W]hat matters [for purposes of determining Section 230 immunity] is not the name of the cause of action," but rather "whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another," *i.e.*, whether it satisfies the second prong of the *Barnes* test. *Id.* at 1101-02; *see also Brittain v. Twitter, Inc.*, 2019 WL 2423375, *3 (N.D. Cal. June 10, 2019) (dismissing, under Section 230, plaintiff's First Amendment and tortious interference claims because they "arise out of Twitter's deletion of the [plaintiff's] Accounts" and thus "seeks to treat Twitter as a publisher"); *Lewis v. Google LLC*, 461 F.Supp.3d 938, 955 (N.D. Cal. 2020), *aff'd*, 851 F. App'x 723 (9th Cir. 2021) (dismissing, under Section 230, plaintiff's First Amendment and implied covenant claims because they seek to hold YouTube liable for censoring and demonetizing plaintiff's videos).

> With regard to the second prong, this Court previously explained:
>> A claim meets this prong where the claim is based on "behavior that is identical to publishing or speaking." *Barnes*, 570 F.3d at 1107 (emphasis supplied) . . . . "Publishing" . . . includes editorial decisions and functions ancillary to the decision to make content available. Thus, publishing has been found to "involve[ ] reviewing [and] editing," such as "review[ing] material submitted for publication, perhaps edit[ing] it for style or technical fluency," *Barnes*, 570 F.3d at 1102, and "deciding whether to exclude material . . . ." *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1170–71 (9th Cir. 2008).

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 702 F.Supp.3d 809, 826-27 (N.D. Cal. 2023), *motion to certify appeal denied*, 2024 WL 1205486 (N.D. Cal. Feb. 2, 2024).

Plaintiff argues that the alleged "active collaboration [between the social media defendants and] government officials to suppress her speech and viewpoints" transformed defendants' role

5

"from a passive publisher to an active participant in unconstitutional censorship." (Dkt. No. 85, Plaintiff's Opposition to Defendant Meta's Motion to Dismiss ("Meta Oppo.") at 26; Dkt. No. 86, Plaintiff's Opposition to Defendant X Corp.'s Motion to Dismiss ("X Corp. Oppo.") at 25.) In doing so, plaintiff attempts to analogize this case to *Fair Hous. Council of San Fernando Valley*. There, the Ninth Circuit declined to extend Section 230 immunity to certain features of a website designed to pair renters with roommates. 521 F.3d at 1165–67. Specifically, the court observed that, by requiring users to disclose protected characteristics such as their sex and sexual orientation when selecting from a limited set of pre-populated answers, and then filtering users' search results and email notifications based on those characteristics, the website "be[came] much more than a passive transmitter of information provided by others; it be[came] the developer, at least in part, of that information." *Id.* at 1166.

Plaintiff's reliance on this case does not persuade. The court in *Fair Housing* drew an explicit distinction between a developer "making the affirmative decision to publish" and a publisher who "determine[s] whether or not to prevent [a third party's] posting." *Id.* at 1170-71. What caused the *Fair Housing* defendant to lose its Section 230 immunity was its role in "elicit[ing] the allegedly illegal content and mak[ing] aggressive use of it in conducting its business." *Id.* at 1172. By contrast, "any activity that can be boiled down to deciding whether to *exclude* material that third parties seek to post online" is "precisely the kind of activity for which section 230 was meant to provide immunity." *Id.* at 1170–71 (emphasis supplied).

Unlike in *Fair Housing*, here, plaintiff does not allege that Meta and X Corp. played any role in creating or developing the allegedly illegal content. *See id.* at 1165–67. Rather, all of plaintiff's claims concern Meta and X Corp.'s decisions to remove or exclude, including by suspending or "shadow banning" plaintiff's accounts. (*See* FAC ¶¶ 74, 86, 95, 102, 117, 128, 138 (basing each of the seven counts on defendants' alleged censorship of plaintiff).) Plaintiff's allegation that these decisions resulted from a larger conspiracy with the federal government does not change the nature of the underlying conduct as protected publisher activity. *See, e.g.*, *Ebeid v. Facebook, Inc.*, 2019 WL 2059662, *5 (N.D. Cal. May 9, 2019) ("[D]efendant's decision to remove plaintiff's posts undoubtedly falls under 'publisher' conduct."); *Zimmerman v. Facebook, Inc.*, 2020 WL 5877863,

6

\*1 (N.D. Cal. Oct. 2, 2020) ("A social media site's decision to delete or block access to a user's individual profile falls squarely within [Section 230] immunity.").[3]

Thus, Section 230 immunity applies, and on that basis the Court **GRANTS** Meta and X Corp.'s motions to dismiss plaintiff's claims in their entirety. Amendment is futile. *See, e.g.*, *Brittain*, 2019 WL 2423375, \*4 (N.D. Cal. June 10, 2019) (dismissing plaintiff's claims with prejudice where "plaintiff cannot cure" the Section 230 "defect"). *Lewis*, 461 F.Supp.3d at 963 (dismissing plaintiff's claims under Section 230 "with prejudice because granting leave would be futile"); *Ebeid*, 2019 WL 2059662, \*5 (dismissing with prejudice plaintiff's First Amendment and UCL claims "because CDA immunity applies"). Thus, the Court dismisses plaintiff's claims **WITHOUT LEAVE TO AMEND**.

**B.    Meta and X Corp.'s First Amendment Rights**

As an alternative ground, X Corp. relies on recent Supreme Court doctrine to argue that its own First Amendment rights bar all of plaintiff's claims. *See Moody v. NetChoice*, *LLC*, 603 U.S. 707, 737–38 (2024).

In *NetChoice*, the Supreme Court examined two state statutes that prohibited social media platforms from making certain content moderation decisions. *Id.* at 717. The court determined those statutes to be facially unconstitutional, noting that "[a] platforms' editorial decisions about which posts to remove, label, or demote" are "expressive choices" entitled to First Amendment protection. *Id.* at 739–40; *see also Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001) ("[I]f the acts of 'disclosing' and 'publishing' information do not constitute speech, it is hard to imagine what does fall within that category.") (citation omitted).

Courts in this circuit have applied this rationale to dismiss claims challenging a platform's decision to remove a user's account or content. *See, e.g.*, *Children's Health Def. v. Meta Platforms, Inc.*, 112 F.4th 742, 759 (9th Cir. 2024) (*petition for cert. filed*, 24-732 (Jan. 6, 2025) (dismissing

---

[3] Plaintiff also argues that Section 230 "does not extend to conduct constituting viewpoint discrimination or actions taken outside the bounds of good faith." (Meta Oppo. at 26; X Corp. Oppo. at 25.) Plaintiff provides no authority—and the Court is aware of none—that identifies such blanket exceptions to Section 230 immunity.

plaintiff's First Amendment claim in part because "Meta has a First Amendment right to use its platform to promote views it finds congenial and to refrain from promoting views it finds distasteful"); *O'Handley v. Padilla*, 579 F.Supp.3d 1163, 1186–87 (N.D. Cal. 2022), *aff'd sub nom. O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023) (dismissing plaintiff's First Amendment claim in part because "Twitter makes decisions about what content to include, exclude, moderate, filter, label, restrict, or promote, and those decisions are protected by the First Amendment"); *see also In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 702 F.Supp.3d at 837 (claims challenging the timing and frequency of social media platforms' notifications are barred by the First Amendment because they would "require [the platforms] to change when and how much they publish speech").

Here, plaintiff seeks to hold Meta and X Corp. liable for "removing or suspending social media posts and accounts," (FAC ¶ 24), which are the exact sort of "editorial decisions" cases like *NetChoice* have identified as a First Amendment right.[4] *See NetChoice*, 603 U.S. at 739–40; *Children's Health Def.*, 112 F.4th at 759; *O'Handley*, 579 F.Supp.3d at 1187. Meta and X Corp. do not lose that right simply because their views on what content should be excluded from their platforms "happen to be shared by the government." *Children's Health Def.*, 112 F.4th at 759.

Moreover, plaintiff's failure to oppose X Corp.'s argument on this issue is, itself, grounds for dismissal on this basis. *See Moore v. Apple, Inc.*, 73 F.Supp.3d 1191, 1205 (N.D. Cal. 2014) (holding plaintiff's failure to oppose a motion to dismiss a particular claim as an abandonment of that claim).

As with Section 230 immunity, plaintiff cannot surmount Meta and X Corp.'s First Amendment protection by amending the pleadings. *See O'Handley*, 579 F.Supp.3d at 1188 (dismissing claims with prejudice in part because "Twitter has important First Amendment rights that would be jeopardized by a Court order telling Twitter what content-moderation policies to adopt

---

[4] An editorial decision can be "both an expression of a publisher's point of view (protected under the First Amendment) and a publication of a third-party's content (protected under Section 230)," as Meta and X Corp.'s decisions are here. *Doe (K.B.) v. Backpage.com, LLC*, 2025 WL 719080, *4 (N.D. Cal. Mar. 3, 2025). "That [social media platforms'] moderation decisions are also protected by the First Amendment does not strip them of their Section 230 immunity." *Id.*

8

and how to enforce those policies."). Thus, on this additional basis the Court dismisses plaintiff's claims **WITHOUT LEAVE TO AMEND**.[5]

### IV. CONCLUSION

In light of the foregoing, it does not appear possible that the deficiencies herein can be cured by amendment and thus amendment would be futile. The motions to dismiss are **GRANTED WITHOUT LEAVE TO AMEND** with respect to all of plaintiff's claims against defendants Meta and X Corp.

Within five business days of the date of this order, plaintiff shall provide a status of the government defendants, including service, appearances, response to the FAC, and whether plaintiff continues to pursue this action against them.

This terminates Docket Nos. 83 & 84.

**IT IS SO ORDERED**.

Date:   June 10, 2025

YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT COURT JUDGE

---

[5] Because the Court finds that Section 230 and the First Amendment bars plaintiff's claims outright, it does not need to reach defendants' other arguments as to the sufficiency of those claims, whether they are barred by defendants' limitations of liability provisions, and whether plaintiff is entitled to the relief she seeks.

9